IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GTE MOBILNET OF CALIFORNIA LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | No. C 05-04056 SI<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

On July 7, 2006, the Court heard argument on plaintiff's motion for partial summary judgment and defendant's motion for partial summary judgment. Having considered the arguments presented and the papers submitted, and for good cause appearing, the Court hereby GRANTS IN PART defendant's motion and DENIES plaintiff's motion.

**BACKGROUND**

Plaintiff GTE Mobilnet of California Limited Partnership dba Verizon Wireless ("Verizon") is a company licensed by the Federal Communications Commission to build and operate wireless cellular transmission stations to serve Northern California. In an effort to improve its coverage in the city of San Francisco, Verizon sought a permit from the city of San Francisco to install wireless equipment on public rights-of-way throughout the city. This equipment, antennas measuring approximately two feet by two feet and small utility boxes, would be installed on existing telephone and utility poles.

Both state and local law regulates the ability of telephone corporations to utilize public rights-of-way for their equipment. To promote the provision of telecommunications services, state law grants

telephone corporations a broad right of access to public rights-of-way. California Public Utilities Code § 7901 provides this right:

> Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this State, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters.

Cal. Pub. Util. Code § 7901. Consistent with this broad state-created right, San Francisco exempts telephone corporations from the usual requirement that a company obtain a "franchise" before it may operate utility facilities in the public rights-of-way. *See* San Francisco Admin. Code § 11.4(c). Instead, San Francisco only requires telephone corporations to obtain utility conditions permits ("UCPs") before they may use the public rights-of-way. The sole prerequisite for obtaining a UCP is proof that the company has authorization from the California Public Utilities Commission ("CPUC") to occupy and use the public rights-of-way. *See* San Francisco Admin. Code § 11.9. Generally, this proof takes the form of a certificate of public convenience and necessity ("CPCN") issued by the CPUC, although the regulation also envisions that other forms of proof may be provided. *Id.* ("Persons intending to construct, install, or maintain Telephone Lines to provide Telecommunications Services shall prove their legal right to occupy and use the Public Rights-of-Way by providing the Department of Public Works a current copy of their [CPCN] issued by the CPUC, or otherwise demonstrate that they have been authorized to occupy the Public Rights-of-Way by the CPUC.").

On April 14, 2005, Verizon Wireless submitted an application for a UCP to San Francisco through its agent, NextG Networks. In the application, however, Verizon did not include a copy of its CPCN, nor did it represent that it had a CPCN. Instead, the application stated that Verizon had "registered" with the CPUC. Verizon took this position because the CPUC no longer issues CPCNs to wireless carries. The CPUC stopped doing so because federal law preempted its authority to regulate the entry of wireless carriers.

Based on Verizon's failure to provide a CPCN, San Francisco denied its UCP request. Instead, the City informed Verizon that it needed to obtain an encroachment permit for every wireless box that it wanted to install in San Francisco. Verizon appealed this decision to the San Francisco Board of

Appeals. There, for the first time Verizon argued that a CPCN it received in 1984 was still valid.[1] It admitted, however, that its UCP application was not based on this CPCN. AR at 173 ("The application does not reference the CPCN."). Based on its determination that Verizon's CPCN was no longer valid, the Board denied Verizon's appeal and later denied its request for rehearing. AR 02 ("[The Department of Public Works] correctly determined that appellant did not have a valid and existing [CPCN] . . . and therefore did not meet the requirements for a [UCP] under § 11.9 of the San Francisco Administrative Code.").

On October 7, 2005, Verizon filed this action, claiming that San Francisco's decision violated the federal Telecommunications Act, the California Public Utilities Code, and San Francisco's own administrative regulations. Now before the Court are cross motions for summary judgment on Verizon's first and seventh causes of action. The Court agrees with San Francisco that Verizon did not meet the requirements of § 11.9 of the San Francisco Administrative Code. It finds that an issue of fact remains, however, regarding whether San Francisco's actions interfere with Verizon's rights under § 7901.[2]

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there

---

[1] San Francisco does not dispute that Verizon was issued a CPCN in 1984, but argues that it is no longer valid because the CPUC no longer issues CPCNs to wireless carriers.

[2] In addition to the administrative record that the City has provided, both parties have submitted unopposed requests for judicial notice. The Court GRANTS these requests (Docket Nos. 38, 41).

3

is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*

## DISCUSSION

Both Verizon and San Francisco seek summary judgment on Verizon's first and seventh claims for relief. Verizon's first claim alleges that San Francisco's decision to deny Verizon's application for a UCP violated the Telecommunications Act of 1996. Verizon's seventh claim seeks a writ of mandamus on the ground that San Francisco has not complied with California Public Utilities Code § 7901 or San Francisco Administrate Code § 11.9.

**I.     Telecommunications Act of 1996**

Plaintiff's first claim alleges that San Francisco's action violates section 332(c)(7) of the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7). That section, entitled "Preservation of local zoning authority," provides:

> (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof--
>
> > (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
> >
> > (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

4

. . .

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(i), (iii). Verizon argues that the Board's denial of its permit application was not supported by "substantial evidence." San Francisco contests this assertion, and also argues that § 332(c)(7) is not applicable to Verizon's application for a UCP.

### A.  Applicability of 47 U.S.C. § 332(c)(7)

As an initial matter, San Francisco argues that § 332(c)(7) does not apply to the Board's decision in this case. According to San Francisco, § 332(c)(7) applies only to "zoning" decisions, not to administrative matters such as the decision to issue a UCP. San Francisco argues that the title of § 332(c)(7), "preservation of local zoning authority," supports its position. It also argues that the section does not fit comfortably over the decision to deny a UCP application, because the section anticipates site-specific decisions. UCPs, in contrast, provide wireless companies with a broad right to install telecommunications equipment on the public rights of way throughout the city. *See* San Francisco Administrative Code § 11.9.

San Francisco previously raised an identical argument in its motion to dismiss, which the Court rejected. The Court continues to believe its ruling was correct. While the title refers to "zoning," the text of § 332(c)(7) applies to "regulation of the placement . . . of personal wireless service facilities." *See, e.g.*, 47 U.S.C. § 332(c)(7)(A), (B)(i), (B)(iii). The term "placement" is broad enough to cover permits, such as the UCP at issue here, that would allow a carrier to place antennas at a variety of locations.[3] Thus, the Court finds that the statute's use of the word "zoning" in the title of the section is not sufficient to restrict its reach. *See Perez-Martin v. Ashcroft*, 394 F.3d 752, 758 (9th Cir. 2005) ("[I]t is a well-settled canon of statutory interpretation that specific provisions prevail over general

---

[3] Verizon argues that the Ninth Circuit decided this issue in *Sprint PCS Assets L.L.C. v. City of La Cañada-Flintridge*, 448 F.3d 1067 (9th Cir. 2006). While that decision applied § 332(c)(7) in a challenge to a city's denial of a permit to place wireless facilities on a public right of way, it did not purport to reach the issue presented here. Further, the permits applied for were site-specific permits, and not general permits such as a UCP. *See id.* at 1069-70.

5

provisions.").

While San Francisco is correct that the scheme envisioned by § 332(c)(7) anticipates a greater amount of process than the city employed in deciding whether to award the UCP, that observation is also not sufficient to limit the reach of the statute. Indeed, if the requirements to place wireless facilities are relatively simple, such as in this case, it follows that the written decision based upon substantial evidence can be relatively simple as well.

Accordingly, the Court declines to revisit its determination that § 332(c)(7) applies to San Francisco's decision to deny Verizon a UCP.

### B.  Substantial Evidence

Verizon bases its argument that San Francisco's decision was not based on substantial evidence on two grounds. First, it claims that it possesses the right to use the public rights-of-way under state law, and that San Francisco's administrative regulations may not interfere with that right. Second, it argues that the city incorrectly found that Verizon failed to meet the requirements of § 11.9.

#### 1.  Preemption of San Francisco Administrative Code by State Law

Verizon's first argument is that California Public Utilities Code § 7901 preempts San Francisco Administrative Code § 11.9. According to Verizon, § 7901 grants it a broad right to install telecommunications equipment on all public rights-of-way throughout the state. It argues that the restrictions in San Francisco's administrative code are inconsistent with that right and are therefore preempted. As set out above, § 7901 provides:

> Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this State, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters.

Cal. Pub. Util. Code § 7901.

##### (a)  Applicability of § 7901 to Wireless Carriers

As an initial matter, San Francisco argues that § 7901 is inapplicable to this case because

6

Verizon is not a "telephone corporation" and is not seeking to install "telephone lines" as those terms are used in § 7901. This argument is based on a complicated recitation of the history of § 7901. In brief, § 7901 was passed in 1905 and was originally codified as section 536 of the California Civil Code. Later, in 1915, the California legislature passed the Public Utilities Act, which included a definition of "telephone line" that encompassed equipment used "to facilitate communication by telephone, whether such communication is had with or without the use of transmission wires." California Public Utilities Act, ch. 91, § 2(u), 1915 Cal. Stat. 115, 117. In 1951, however, the legislature repealed the Public Utilities Act and passed the Public Utilities Code. In the process it moved Civil Code § 536 to Public Utilities Code § 7901, and imported the definition of "telephone line" from the Public Utilities Act into Public Utilities Code § 233. The Public Utility Code § 234 also included a definition of "telephone corporation" that relied on the definition of "telephone line" in § 233 and therefore encompassed wireless carriers. The definitions in § 233 and § 234, however, only apply to the construction of Part 1 of Division 1 of the Public Utilities Code, *see* Cal. Pub. Util. Code § 203, while § 7901 is found in Division 4 of the Public Utilities Code. Thus, San Francisco argues that there has been no change to the meaning "telephone line" or "telephone corporation" as used in § 7901 since that statute was first adopted in 1905, and that neither should therefore apply to wireless carriers or their facilities. *See Sunset Tel. & Tel. Co. v. City of Pasadena*, 161 Cal. 265, 277 (1911) (finding that statute's use of term "telegraph corporation" and "lines of telegraph" did not encompass telephone corporations or telephone lines).

The California Court of Appeal recently considered a similar argument in *Sprint Telephony v. City of San Diego*, -- Cal. Rptr. 3d --, 2006 WL 1680053 (Cal. App. June 20, 2006), and rejected it. The Court found that "when 'the same term or phrase is used in a similar manner in two related statutes concerning the same subject, the same meaning should be attributed to the term in both statutes.'" *Id.* at *6 (quoting *Diekmann v. Superior Court*, 175 Cal. App. 3d 345, 356 (Cal. App. 1985)). The court also found that recent legislative enactments by the California legislature indicate that the legislature understood § 7901 to encompass wireless providers. *See id.* (citing Cal. Gov't Code § 14666.8, which related only to wireless carriers yet declares that "nothing in this section alters any existing rights of . . . telephone corporations pursuant to Section 7901 of the Public Utilities Code.").

7

The Court finds this analysis convincing. Accordingly, it finds that wireless carriers are included in the definition of "telephone corporation" in § 7901, and that the definition of "telephone line" in § 7901 is broad enough to reach wireless equipment.

### (b) Preemption

The California Constitution provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." California Const., art XI, § 7. A local regulation conflicts with state law if it "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897 (1993). Here, no one contends that San Francisco's regulation duplicates § 7901. Thus, the Court must determine if the regulation contradicts § 7901 or if the legislature has "manifested its intent to 'fully occupy' the area." *Id.* at 898.

### (i) Field Preemption

Verizon focuses its arguments on field preemption, arguing that § 7901 fully occupies the regulation of the construction of wireless facilities in public rights of way. Verizon bases this argument on the fact that the only limitation contained in § 7901 is that the facilities may not "incommode the public use of the road or highway." Thus, Verizon argues that § 7901 bars all local regulation of telephone companies, allowing local municipalities only to ensure that the telephone equipment will not interfere with the use of the public rights-of-way.

Two courts have previously considered this question. The Ninth Circuit reached this issue in *Sprint PCS*, concluding that § 7901 preempted local ordinances. *See Sprint PCS Assets L.L.C. v. City of La Cañada-Flintridge*, 435 F.3d 993, 997-98, *amended*, 448 F.3d 1067 (9th Cir. 2006). Verizon's argument largely follows the Ninth Circuit opinion, which concluded that § 7901 preempted local ordinances except to the extent that they protected against telecommunications equipment interfering with use of a roadway. After Verizon submitted its opening brief, however, the Ninth Circuit dramatically amended the opinion, removing the preemption discussion from the published opinion and placing it in an unpublished memorandum disposition. *See Sprint PCS*, 448 F.3d at 1069.

8

1    Recently, the California Court of Appeal reached the opposite conclusion, expressly disagreeing
2 with the Ninth Circuit. *Sprint Telephony v. County of San Diego*, -- Cal. App. --, 2006 WL 1680053,
3 at *10 n.13 (Cal. App. June 20, 2006) ("[W]e believe the federal ipse dixit is wrong and should not be
4 followed."). The California court found that § 7901 did not preempt local regulation of the placement
5 of telecommunications equipment on public rights of way, but rather found that local governments
6 continued to possess a limited ability to regulate the placement and appearance of wireless facilities.
7 *Id.* at *11 ("[T]here is no general state law regulating the siting or appearance of [telephone
8 equipment].").

9    The Court finds the California Court of Appeal's analysis convincing.[4] There are three tests for
10 field preemption:

> (1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; 2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.

15 *Cohen v. Board of Supervisors*, 40 Cal. 3d 277, 292-93 (1985). Section 7901 does not satisfy any of
16 these tests.

17    First, there can be little argument that § 7901 "fully and completely" covers the area of law. As
18 the *Sprint Telephony* court stated, "there is no general state law regulating the siting or appearance of
19 the equipment so authorized." *Sprint Telephony*, 2006 WL 1680053 at *11. Second, § 7901 is not
20 "couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or
21 additional local action." As the *Sprint Telephony* court noted, state laws actually contemplate and
22 endorse further local action. For example, § 7901.1 reserves to localities the ability to "exercise
23 reasonable control as to the time, place, and manner in which roads, highways, and waterways are
24 accessed." Finally, the third test is inapplicable to this case. *See Sprint Telephony*, 2006 WL 1680053
25 at *11.

---

[4]This Court is not bound by the Ninth Circuit's opinion because the Ninth Circuit's discussion of preemption was placed in an unpublished memorandum disposition. *See* Ninth Circuit Rule 36-3 ("Unpublished dispositions and orders of this Court are not binding precedent . . . .").

9

1  Thus, the Court concludes that § 7901 does not preclude municipalities from regulating in the
2  field.

#### (ii)  Conflict Preemption

A local ordinance may also be preempted by state law when it contradicts state law. *See* Cal. Const. art. XI, § 7 ("A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."). On its face, San Francisco's requirement that a wireless carrier hold a CPCN does not necessarily conflict with § 7901. Verizon, however, argues that San Francisco's interpretation of its municipal ordinance effectively bars all wireless carriers from obtaining UCPs.

Verizon appears to be correct in this assertion. San Francisco readily admits that the only requirement for a UCP is proof that the applicant holds a CPCN. San Francisco also admits that the CPUC no longer grants CPCNs to wireless carriers. Thus, it appears to be impossible for a wireless carrier to obtain a UCP in San Francisco.

Were a UCP the sole method of placing wireless facilities in San Francisco's rights-of-way, the San Francisco ordinance would clearly conflict with § 7901 because Verizon would be denied all access to the public rights-of-way. Here, however, there is an alternative that Verizon may pursue: an encroachment permit. Thus, the Court must decide whether San Francisco's encroachment permit process conflicts with § 7901. *See Sprint Telephony*, 2006 WL 1680053, at *11 (considering argument that regulation was invalid because "it far exceed[ed] the permissible scope of regulation").

The Court finds that a question of fact remains on this issue. Neither party has provided the Court with any description of the process for obtaining an encroachment permit, nor is the Court aware of the considerations that San Francisco takes into account when reviewing an application for such a permit.[5] While there is certainly some support for Verizon's argument that the encroachment permit

---

[5] Verizon's argument that requiring wireless providers, but not wireline providers, to obtain major encroachment permits violates the "equivalent treatment" requirement of § 7901.1 of the California Public Utilities Code must be rejected. That section provides:

(a) It is the intent of the Legislature, consistent with Section 7901, that municipalities

10

process is burdensome,[6] it is equally true that the *Sprint Telephony* court upheld regulation of the placement of wireless facilities with far more demanding requirements than the UCP Verizon seeks. *See, e.g.*, *Sprint Telephony*, 2006 WL 1680053 at *2-3 (describing four-tiered structure for processing applications for the installation of wireless facilities).

Accordingly, the Court finds that an issue of material fact remains regarding the burden that an encroachment permit will place on Verizon's ability to access the public rights-of-way. The Court therefore cannot grant either party's motion for summary judgment on Verizon's claim that San Francisco's action violated California Public Utilities Code § 7901.

### 2.     Violation of San Francisco Administrative Code § 11.9

Verizon also argues that the City violated its own administrative regulation by refusing to grant its UCP application. That regulation provides:

> The Department of Public Works may require a Person, including a Grantee of an existing Franchise, to obtain a Utility Conditions Permit prior to their construction, installation, or maintenance of Telephones Lines (as defined in the California Public Utilities Code) in the Public Rights of Way. UCPs shall be issued by the Department of Public Works in a manner consistent with Applicable Law to Persons who have authority as a Telephone Corporation (as defined in the California Public Utilities Code) to occupy the Public Rights-of-Way pursuant to California Public Utilities Code Section 7901 and who are willing to comply with the City's requirements regarding the physical use and occupation of the Public Rights-of-Way. Persons intending to construct, install, or maintain Telephone Lines to provide Telecommunications Services shall prove their legal right to occupy and use the Public Rights-of-Way by providing the Department of

---

shall have the right to exercise reasonable control as to the time, place, and manner in which roads, highways, and waterways are accessed.

(b) The control, to be reasonable, shall, at a minimum, be applied to all entities in an equivalent manner.

Cal. Pub. Util. Code § 7901.1. The Court finds that given the differences between wireless and wireline carriers, equivalence must take into account the type of entity being regulated. Indeed, Verizon's argument, if accepted, would have made the statutory scheme in *Sprint Telephony* easily in violation of § 7901.1(b). Yet the California Court of Appeal, which discussed § 7901.1 in its *Sprint Telephony* opinion, did not find any problems arising from § 7901.1.

[6]For example, Verizon asserts that "an encroachment permit would be needed for each and every installation, . . . and would involve a negotiated agreement on economic terms, CEQA review, General Plan review, public hearings, and the ultimate issuance of the permit at the complete discretion of the Board of Supervisors." Pl. Mot. at 6 n.6. Verizon has also directed the Court to a recent decision from this district, which found that the burden of San Francisco's encroachment permit process violated § 253 of the Telecommunications Act.

11

>Public Works a current copy of their certificate of public convenience and necessity issued by the CPUC, or otherwise demonstrate that they have been authorized to occupy the Public Rights-of-Way by the CPUC.

San Francisco Admin. Code § 11.9. Verizon argues, first, that it is a "Person[] who ha[s] authority as a Telephone Corporation . . . to occupy the Public Rights-of-Way pursuant to California Public Utilities Code Section 7901," and second, that it actually possesses a valid CPCN.

As to Verizon's first argument, this Court's order has already determined that Verizon is a telephone corporation within the meaning of § 7901. That fact, however, is somewhat beside the point because the San Francisco regulation clearly requires that an applicant prove that it possess authority from the CPUC to occupy the public rights-of-way. Aside from a CPCN issued in 1984, discussed below, Verizon provided no such proof here. Indeed, given that the CPUC no longer regulates wireless providers, it is possible that no such proof exists. This is not the "Alice in Wonderland" result that plaintiff contends it to be. Rather, this Court believes it to be a legitimate means of distinguishing between wireless and wireline providers and the issues raised by the equipment both types of companies would install on the public rights-of-way.[7]

The Court also disagrees with Verizon's argument that the CPCN it was issued in 1984 remains valid. In 1993, Congress amended the Federal Communications Act to preempt state regulation over the "entry of and rates charged by" wireless carriers. *See* Pub. L. 103-66, § 6002(c)(3)(A), 107 Stat. 312, 394 (1993) (codified at 47 U.S.C. § 332(c)(3)(A)). In light of that statute, the CPUC ruled that it no longer had authority to issue CPCNs to wireless carriers because it no longer possessed the ability to authorize wireless carriers to operate in California. *See In re Mobile Telephone Service and Wireless Communications*, 81 C.P.U.C.2d 152 (Cal. Pub. Util. Comm'n July 2, 1998). Thus, contrary to Verizon's argument, it is irrelevant that its CPCN "has not been revoked, cancelled, or otherwise called

---

[7]Verizon's "Alice in Wonderland" accusations seem premised on the assumption that there must be a way it can obtain a UCP from San Francisco. This is not necessarily correct. Given the differences between wireless and wireline providers and the equipment they install – and specifically in light of the community battles that unsightly wireless installations have provoked in cities across the country – the San Francisco Administrative Code provision may be intended to differentiate between the two types of telephone companies. San Francisco may have made the legitimate choice to subject wireless equipment to more extensive regulation than wireline equipment via the encroachment permit process. While possession of a CPCN is a somewhat awkward way of distinguishing between the wireless and wireline carriers, it is nonetheless a fairly accurate distinction under current state law.

12

into question by the CPUC." Pl. Mot. at 15. Rather, the grant of authority that the CPCN represented has been completely extinguished; the CPCN now has no legal effect whatsoever.

Verizon failed to comply with the single requirement to obtain a UCP: proof that it was authorized by the CPUC to occupy the public rights-of-way. The Court acknowledges that this result means that no wireless provider has a right to a UCP under § 11.9, but does not consider such a result as offensive as Verizon makes it out to be. As discussed above, the City has the authority to regulate the placement and appearance of telecommunications equipment installed on its public rights-of-way. Thus, San Francisco need not grant wireless providers blanket permission to install their equipment throughout the city, but may require them to go through a site-specific permitting process provided it is not so burdensome that it runs afoul of § 7901.

## II. State and Local Laws

Verizon's seventh cause of action seeks to have the Board's decision overturned on the ground that the City's decision violates both California Public Utilities Code § 7901 and San Francisco Administrative Code § 11.9. These arguments are identical to the ones discussed above; Verizon argues that § 7901 grants it a broad right to install telecommunications equipment on all public rights-of-way throughout the state, and also argues that it satisfied the requirements of the San Francisco Administrative Code. For the reasons discussed above, the Court finds that an issue of fact remains on whether the encroachment permit process is so burdensome that it conflicts with § 7901, and rejects Verizon's argument that San Francisco's actions violated § 11.9 of its administrative code.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART San Francisco's motion for summary judgment and DENIES Verizon's motion for summary judgment (Docket Nos. 37, 43).

**IT IS SO ORDERED.**

Dated: July 17, 2006

SUSAN ILLSTON
United States District Judge