1

2

3

4

5 IN THE UNITED STATES DISTRICT COURT

6 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8 GTE MOBILNET OF CALIFORNIA LIMITED          No. C 05-04056 SI
PARTNERSHIP,
9                                            **ORDER GRANTING PLAINTIFF'S**
                 Plaintiff,                  **MOTION FOR SUMMARY JUDGMENT,**
                                             **AND DENYING DEFENDANTS'**
10      v.                                   **MOTION FOR PARTIAL SUMMARY**
                                             **JUDGMENT**
11 CITY AND COUNTY OF SAN FRANCISCO,
et al.,
12
                 Defendants.
13 _____/

14          On December 1, 2006, the Court heard arguments on cross-motions for summary judgment

15 brought by plaintiff GTE Mobilnet of California and defendants City and County of San Francisco, et

16 al.  Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS

17 plaintiff's motion and DENIES defendants' cross-motion for the reasons discussed below.

18

19                                        **BACKGROUND**

20 **I.      Factual Background**

21          The facts of this case are not in dispute.  Plaintiff GTE Mobilnet of California, doing business

22 as Verizon Wireless ("Verizon"), is a wireless telecommunications carrier that provides

23 telecommunications services in San Francisco pursuant to a license issued by the Federal

24 Communications Commission.  *See* Compl. ¶ 18.  Since 2004, Verizon has served tens of thousands of

25 customers in San Francisco and earned annual gross revenues in the tens of millions of dollars.  *See*

26 Stipulation for Discovery Purposes on Verizon Wireless' Section 253 Claim.  To provide these services,

27 Verizon has constructed a network of facilities on private property.  *See* Ionin Decl. ¶ 3 and Ex. A.

28

**United States District Court**

For the Northern District of California

1   Verizon sought to expand its service by installing antennas in public rights-of-way—on existing utility

2   poles and small equipment boxes placed on the existing poles—in San Francisco. *See* Compl. ¶ 18. On

3   or around January 14, 2005, NextG Networks, on behalf of Verizon, submitted minor encroachment

4   permit applications to install the antennas in the public rights-of-way. *See id.*

5      The City and County of San Francisco ("City") informed Verizon that it must apply for a Utilities

6   Conditions Permit ("UCP") pursuant to San Francisco Administrative Code § 11.9 in order to install its

7   facilities in the public rights-of-way.  Verizon's agent, NextG Networks, submitted a UCP application

8   to the Department of Public Works ("DPW") on Verizon's behalf.  Administrative Record ("AR") 258-

9   289.  The DPW denied the application on the basis that Verizon was "not qualified" for a UCP because

10  it had not obtained a Certificate of Public Convenience and Necessity ("CPCN") from the California

11  Public Utilities Commission ("CPUC").  *See* AR 291.  The City then informed Verizon that it must

12  apply for a "major encroachment permit" pursuant to San Francisco Public Works Code § 786.1 *et seq.*

13  to install its facilities.  *See* AR 136-137.

14      To obtain a major encroachment permit, an applicant must file an application "in accordance

15  with the policies, rules and regulations of the Director of Public Works." Verizon RJN, Ex. A (S.F. Pub.

16  Works Code § 786.1).[1]   The Director of Public Works requires an applicant to provide information

17  necessary to "assure the presentation of pertinent facts for proper consideration of the case and for the

18  permanent record."  *Id.*  This information includes plans "showing the design, location, nature of the

19  encroachment and other pertinent information to enable the various City agencies to evaluate the effect

20  of the encroachment(s) as it relates to their appropriate rules and regulations."  Verizon RJN, Ex. B

21  (Information & Requirements for Major Encroachment).  Here, the DPW requested that Verizon provide

22  the following information to apply for a major encroachment permit:  (1) the purpose of the proposed

23  facilities; (2) maps and pictures showing the location of the proposed facilities; (3) drawings/pictures

24  of the proposed facilities; and (4) contact person information. *See* AR 136.  Verizon refused to continue

25  with the major encroachment permit application process and instead initiated this lawsuit.  *See* Pl.'s

26

27

28      [1]The Court hereby grants Verizon's request that the Court take judicial notice of the City's Public Works Code and associated "Information & Requirements" documents.

1    Reply and Opp'n to Defs.' Mot. for Summ. J. 5:1-3.

2          Had Verizon continued with the process and submitted an application, the DPW would have

3    submitted the application to various other City agencies and persons having interest in the use of the

4    City's public rights-of-way, enabling those agencies and persons to express their support for or concerns

5    about the proposed encroachment. *See* Verizon RJN, Ex. A (S.F. Pub. Works Code § 786.2). The DPW

6    would have also noticed a public hearing to allow the public to express their support or concerns. *See*

7    *id.* at §§ 786.3-786.5. Finally, the DPW would have issued a report to the Board of Supervisors

8    recommending the major encroachment permit for "approval, disapproval or modification including

9    applicable conditions." *Id.* at § 786.6. The City's Board of Supervisors has unfettered discretion to

10    approve, disapprove, modify, or condition the permit, unconstrained by any stated standards. *See*

11    Verizon RJN, Ex. A and B. *See also* AR 298.

12

13    **II.    Procedural Background**

14          Verizon filed its Complaint against the City, the DPW, and the Board of Appeals on October 7,

15    2005. On November 17, 2005, the City filed a motion to dismiss the entire Complaint pursuant to Fed.

16    R. Civ. P. 12(b)(1) and 12(b)(6). Of seven original claims, the Court granted the City's motion to

17    dismiss as to the Fourth (substantive due process), Fifth (§ 1983 as predicated on a violation of 47

18    U.S.C. § 253) and Sixth (declaratory judgment) claims.

19          The parties then filed cross-motions for partial summary judgment on the surviving First (47

20    U.S.C. § 332(c)(7)(B)(iii) - substantial evidence) and Seventh (state law mandamus - violation of Cal.

21    Pub. Util. Code § 7901 and San Francisco Admin. Code § 11.9) claims. The Court granted the City's

22    motion on both claims, to the extent they were based on alleged violation of § 11.9, but otherwise denied

23    the parties' cross-motions.

24          Subsequently, the parties stipulated to dismiss the following claims:  (1) the First claim, to the

25    extent that Verizon alleged that the City's actions were preempted by 47 U.S.C. § 332(c)(7)(B)(i)(I) and

26    47 U.S.C. § 332(c)(7)(B)(i)(II); (2) the Third claim in its entirety; and (3) the Fifth claim, to the extent

27    that Verizon alleged that the City deprived Verizon of certain rights, privileges, and immunities secured

28    by the Due Process Clause of the Fourteenth Amendment.

*United States District Court*

For the Northern District of California

1    Three claims remain to be decided:  the 47 U.S.C. § 253 claim; the 47 U.S.C. § 332(c)(7)(B)(iii)

2    substantial evidence claim (limited to the preemptive effect of Cal. Pub. Util. § 7901); and the state law

3    claim under Cal. Pub. Util. § 7901.  The parties now seek summary judgment on the 47 U.S.C. § 253

4    claim.

5

6                                        **LEGAL STANDARD**

7        Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,

8    and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

9    material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

10   56(c).  In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial

11   burden of identifying for the court those portions of the materials on file that it believes demonstrate the

12   absence of any genuine issues of material fact, the burden of production then shifts so that the non-

13   moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that

14   there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d

15   626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  Summary judgment is

16   also appropriate in cases where the facts controlling the application of a rule of law are undisputed, and

17   the parties merely raise questions of law, "the resolution of which does not involve disputed 'material'

18   facts."  *Delbon Radiology v. Turlock Diagnostic Ctr.*, 839 F. Supp. 1388, 1391 (E.D. Cal. 1993);

19   William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before

20   Trial § 14:207 (The Rutter Group 2006).

21       In judging evidence at the summary judgment stage, the Court does not make credibility

22   determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the

23   non-moving party.  *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v.

24   Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

25   The evidence presented by the parties must be admissible.  *See* Fed. R. Civ. P. 56(e).  Conclusory,

26   speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and

27   defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.

28   1979).

**United States District Court**

For the Northern District of California

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1

**DISCUSSION**

2          Verizon asserts that the City has created an unlawful barrier in violation of the Federal

3   Telecommunications Act, by denying Verizon a UCP and requiring it to obtain major encroachment

4   permits for its proposed facilities constructed in the public rights-of-way.  Specifically, Verizon argues

5   that the Major Encroachment Permit Ordinance ("MEPO") codified in San Francisco Public Works

6   Code § 786.1 *et seq.* is preempted by 47 U.S.C. § 253(a), which provides:

7               No State or local statute or regulation, or other State or local legal requirement, *may*
                *prohibit or have the effect of prohibiting* the ability of any entity to provide any interstate
8               or intrastate telecommunications service.

9   47 U.S.C. § 253(a) (emphasis added).

10

11  **I.      Verizon presents a "facial" rather than "as-applied" challenge to the MEPO**

12         A plaintiff may make either a "facial" or an "as-applied" challenge to an ordinance such as the

13  MEPO.  Verizon asserts that its claim is a facial challenge.  The City argues that Verizon's challenge

14  is actually an as-applied challenge in the guise of a facial challenge.

15         The City contends that because Verizon challenges the MEPO only as it applies to

16  telecommunications carriers like itself and does not seek invalidation of the ordinance generally,

17  Verizon's claim cannot be a facial challenge.  In support of this argument, the City cites *dicta* from the

18  Ninth Circuit case of *Qwest Corp. v. City of Portland*, 385 F.3d 1236 (9th Cir. 2004), which states:

19              We doubt whether [the preemption provision] can be read so broadly as to apply to
                ordinances that are not specific to the telecommunications permitting process. . . . [T]o
20              the extent that [the plaintiff] challenges these ordinance provisions [of general
                applicability], it is questionable whether § 253 even applies.
21

22  *Id.* at 1242.

23         A facial challenge, however, is no less "facial" in nature simply because it does not challenge

24  every possible application of the ordinance.  In an analogous case from this district, a company wishing

25  to install radio transmitters in the City's rights-of-way challenged the City's permit application process

26  as preempted by the Federal Telecommunications Act.  *NextG Networks of Cal., Inc. v. City of San*

27  *Francisco*, 2006 U.S. Dist. LEXIS 36101, at *1 (N.D. Cal. June 2, 2006).  The City in that case relied

28

6

on the same language from *City of Portland* as it does now, questioning the applicability of the

preemption provision to ordinances of general applicability. As the court in *NextG* explained, however,

> All district courts in this circuit considering this passage from *City of Portland* have either rejected it as *dicta* or otherwise distinguished it. . . .
>
> . . . Other courts have rejected the language in *City of Portland* for good reason. If a city could circumvent the requirements of section 253(a) simply by enacting regulations that apply to all utilities, then federal law would fail to provide any meaningful special protection to telecommunications providers. Under the City's proposed construction, it could enact a regulation allowing the City to arbitrarily deny any utility access to public rights-of-way without violating section 253(a). The City's position cannot be reconciled with the plain language of the statute or the deregulatory purpose which it serves.

*Id.* at *19-*20. This Court agrees with the *NextG* court's reasoning, and finds that Verizon's claim is

properly characterized as a "facial" challenge to the MEPO.

## II.     The MEPO is preempted by § 253(a)

In asserting a facial challenge to the MEPO, Verizon does not need to show that the MEPO has

had an actual prohibitive effect. As the Ninth Circuit noted in *City of Portland*, "[w]e do not agree that

Qwest was required to make an actual showing of a 'single telecommunications service that it . . . is

effectively prohibited from providing.' We have previously ruled that regulations that *may* have the

effect of prohibiting the provision of telecommunications services are preempted." *City of Portland*,

385 F.3d at 1241 (emphasis in original). Thus a showing that an ordinance "may have" the effect of

prohibiting a protected interest is sufficient to sustain a facial challenge to the ordinance. A showing

of a particular instance of actual prohibition on service is not required. In *NextG*, the court rejected the

City's argument to the contrary, noting that "the preemption analysis under section 253 focuses on the

regulation itself, and not on its application to a particular provider. The parties' 'as applied' arguments

are therefore not relevant." *NextG*, 2006 U.S. Dist. LEXIS 36101, at *21-*22.

Verizon contends that the MEPO contains unduly burdensome requirements, vests unfettered

discretion in City officials, is "onerous," and has sufficient "discouraging effect" on the provision of

telecommunications services to require the Court to find the MEPO to be in violation of § 253(a) as a

matter of law. Specifically, Verizon argues that:

United States District Court

For the Northern District of California

> [t]he Ordinance on its face imposes very substantial burdens, including that it authorizes only a 'revocable' permit (§ 786); authorizes the DPW to impose extensive application requirements through rules and regulations (§ 786.1); requires that multiple City departments review and formally report on the application (§ 786.2); requires a public hearing before the DPW with extensive notice (§§ 786.3-786.4); requires that the DPW make a formal recommendation to the Board of Supervisors (§ 786.6); and provides for a decision by the Board of Supervisors that is wholly discretionary and devoid of any governing or limiting standards (§ 786.7).

Pl.'s Mot. for Summ. J. 8:12-19.  The Court agrees.  In particular, the wholly discretionary decision-making power granted to the Board of Supervisors, without any governing or limiting standards, certainly may have a prohibitive effect on the provision of telecommunications services.  The Court therefore finds that the MEPO is preempted by § 253(a).

### III.    The MEPO is not saved by the safe harbor provision of § 253(b)

The City contends that even if the MEPO may have a prohibitive effect on telecommunications carriers, the City is entitled to summary judgment because the safe harbor provision of § 253(b) saves the ordinance from preemption as a matter of law.  Section 253(b) provides:

> Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis . . . , requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

The City asserts that the MEPO's requirements are "competitively neutral . . . requirements necessary" to "protect the public safety and welfare," and are therefore protected by § 253(b).

In response, Verizon contends that while the language of § 253(b) protects the right of a State to impose regulation to protect the public safety and welfare, it does not save local government regulation from preemption.  Verizon points out that telephone service has traditionally been recognized as a "matter of statewide concern" and is not a municipal affair.  *See, e.g.*, *Pacific Tel. & Tel. Co. v. City and County of San Francisco*, 51 Cal. 2d 766, 776 (1959).  Furthermore, even if the State has properly delegated this authority to the City, Verizon argues that the MEPO requirements fall outside the scope of regulations that may properly be considered "necessary" to "protect the public safety and welfare."

Section 253(b) applies to local governments to the extent that California has delegated its authority to protect the public safety and welfare to municipalities.  *See Cox Communications PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1260, 1268 (S.D. Cal. 2002).  California has delegated such

8

authority to the City through the California Constitution and the California Public Utilities Code. *See* Cal. Const. art. XII, § 8 (reserving to the City "power over public utilities relating to the making and enforcement of . . . regulations concerning municipal affairs."); Cal. Pub. Util. Code § 2902 (protecting a municipality's powers to regulate "matters affecting the health, convenience, and safety of the general public, including matters such as the use and repair of public streets by any public utility [and] the location of the poles, wires, mains, or conduits of any public utility, on, under, or above any public streets."). The issue, therefore, is whether the MEPO requirements fall within the scope of public safety and welfare protections contemplated by § 253(b).

The City argues that by requiring Verizon to file an encroachment application showing the exact nature and location of its proposed encroachments, it merely attempts to prevent proliferation of telecommunications facilities "without regard for public convenience, the negative views of residents, or aesthetic guidelines." *NextG*, 2006 U.S. Dist. LEXIS 36101, at *27. In *NextG*, the court rejected an identical argument, finding that the City

> has offered no coherent explanation as to which of its permitting requirements furthers the public safety and welfare. In particular, the court cannot conceive of how the City's retention of complete discretion to deny a permit altogether could fall under section 253(b).

*NextG*, 2006 U.S. Dist. LEXIS 36101, at *26-*27.

As in *NextG*, the City here fails to explain how the MEPO requirements—especially the absolute discretion reserved to the City to deny a major encroachment permit—are "necessary" to further the public safety and welfare. As a matter of law, the § 253(b) safe harbor does not apply in this case.

## IV.   The MEPO is not saved by the safe harbor provision of § 253(c)

The City argues alternatively that even if the MEPO may have a prohibitive effect on telecommunications carriers, the ordinance is saved by the safe harbor provision of § 253(c). Section 253(c) provides:

> Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  The Federal Telecommunications Act thus allows for limited local regulation to manage the public

2  rights-of-way.  The Ninth Circuit has explained that "the phrase 'manage the public rights-of-way'

3  means 'control over the right-of-way itself, not control over companies with facilities in the right-of-

4  way.'" *Qwest Communications, Inc. v. City of Berkeley*, 433 F.3d 1253, 1258 (9th Cir. 2006) (quoting

5  *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1177 (9th Cir. 2001)).  The parties here disagree as to

6  whether the MEPO requirements constitute "control over the right-of-way itself" or "control over

7  companies with facilities in the right-of-way."

8       The Court finds definitive guidance from the Ninth Circuit case of *City of Auburn*, 260 F.3d at

9  1165. In that case, the telecommunications provider challenged a city's ordinance requiring the utility,

10  rather than the municipality, to bear the expense of facility relocation made necessary by right-of-way

11  improvements. *Id.*   In holding that the challenged ordinance was preempted by the Federal

12  Telecommunications Act, the Ninth Circuit found particularly problematic that the ordinance granted

13  unfettered discretion to the City "to insist upon unspecified franchise terms and to grant, deny, or revoke

14  a franchise based on unnamed factors." *Id.* at 1179.  Such unfettered discretion, the court explained,

15  went "far beyond the limits of § 253(c), encompassing anything a city deems to be in the public interest."

16  *Id.*

17       Likewise here, the complete discretion left to the City to grant or deny a major encroachment

18  permit is problematic.  The City does not dispute that the MEPO reserves such discretion.  Rather, the

19  City attempts to distinguish *City of Auburn* by noting that in that case, the court's concern was the abuse

20  of discretion in denying an application for a *franchise*—which is required to provide *any* service in the

21  community—as opposed to a mere encroachment permit, the denial of which in this case would not have

22  prevented Verizon from providing telecommunications services in San Francisco altogether.  However,

23  the distinction between a franchise permit and an encroachment permit is irrelevant because denial of

24  either permit may prohibit the provision of service under § 253(a).  The Court determines as a matter

25  of law, therefore, that § 253(c) cannot operate to save the MEPO from preemption.

26

27

28

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court finds that the MEPO imposes a burden that "may have" a prohibitive effect pursuant to § 253(a), and that the § 253(b) and § 253(c) safe harbor provisions do not apply. The Court GRANTS Verizon's motion for summary judgment and DENIES the City's cross-motion. The parties are directed to submit proposed orders as to the relief that should be granted in light of this order. (Docket Nos. 58, 67).

**IT IS SO ORDERED.**

Dated: February 6, 2007

_____
SUSAN ILLSTON
United States Distrixct Judge